Case number 090070, Papal v. Maria Jimenez. Good morning, Your Honors. Rebecca Levy from the Office of the State of Health Defender, arguing on behalf of Maria Jimenez. I'm going to begin by briefly discussing the second issue raised in this case, and then spend the remainder of my time addressing the first argument. Regarding the second issue, Maria alleged in her post-conviction petition that her protection against being placed in double jeopardy was violated where the trial court entered four murder convictions and four murder sentences where one person was murdered, and where the court also entered two convictions and sentences for home invasion where one home was invaded. The law is well settled that multiple punishments for the same offense is a double jeopardy violation, which, of course, is a constitutional claim. This issue alone is dispositive of this entire appeal. Under this court's recent decision in People v. Cowart, as well as under the Post-Conviction Hearing Act itself, the trial court erred in dismissing the petition. This court should, therefore, reverse the summary dismissal in pursuant to People v. Rivera remand the entire petition for second stage proceedings under the Post-Conviction Hearing Act. Regarding the first issue raised in the petition, the trial court also erred in dismissing it where Maria alleged the constitutional claim that her trial attorney was ineffective for failing to move to suppress her statements, where under People v. Hodges it's at least arguable that trial counsel's inaction fell below an objective standard of reasonableness, and where it's at least arguable that Maria was prejudiced by his failure to file the motion. There are three statements admitted against Maria at trial, one handwritten and two video statements. Maria alleged that her statements were involuntary for two reasons, and neither of the reasons are based on an indisputably meritless legal theory or fanciful factual allegations. She first alleged that all of her statements were taken in violation of her right to an attorney. In the affidavit attached to the petition, which this court must take as true, she states that she told Detective Luther Samuel that she wanted an attorney on more than one occasion. The trial record does not refute this claim. And she also states in the affidavit that she told her trial attorney that she had asked Detective Samuel for an attorney. Once she asked him for an attorney, under Edwards v. Arizona, all questioning should have stopped. And rather than that happening, two state's attorneys went on to question her at least six different times in addition to any questioning on the part of the police. Maria also alleged in her petition that the video statements where she first implicated herself in the murder were not voluntary because they were taken after she had been held for more than 60 hours without a probable cause hearing. It's clear that the length of time that she was held contributed to her confession because her statements became more inculpatory as time went on. At the time that she was questioned by the police and state's attorneys, Maria was only 17 years old. She had dropped out of high school after her sophomore year. She was three months pregnant, and in her affidavit she alleged she had slept for a total of 20 minutes when she gave the statement after being held for 60 hours. She also did not have a criminal history that would indicate that she had experience of being interrogated by the police. It's at least arguable that the motion to suppress could have been granted on either of these bases if trial counsel had filed one. It's also clear from the record that no trial strategy supports counsel's failure to file this motion. Having the statement suppressed would have been Maria's best chance of success at trial where her first video statement contains a confession of felony murder. Based on counsel's opening and closing arguments at trial, it's clear that he didn't understand the law of felony murder. Even the state pointed out to the trial court in its closing argument at trial that defense counsel had conceded her guilt. Defense counsel argued in closing and in opening that because Maria stated in her statement that she had only planned to rob the victim, along with this other person named Magic, that they had planned to rob the victim only and not murder her, that she was not guilty of murder. And, of course, that's not the law. It's also at least arguable that she was prejudiced by counsel's failure to file the motion. Without Maria's confession, there was little other evidence against her. There was no physical evidence, no fingerprints. The police did not recover the proceeds of the robbery from her. The only other evidence against her was the testimony from Hernandez and then this person named Magic, and neither can be described as credible witnesses. Magic, at least, was a gang member. He was good friends with Hernandez, and both of their testimonies protect Magic in that they leave him outside of the house at the time of the murder. And Magic conveniently fled the state for two years the day after the murder occurred. At the very least, it's arguable that the outcome of the trial would have been different if counsel had filed the motion to suppress, because it's also arguable that counsel's failure to file the motion was objectively unreasonable and not some sort of trial strategy on his part. The trial court erred in summarily dismissing the petition. We're therefore asking that Your Honors remand the case for second-stage proceedings under the Post-Conviction Hearing Act. And if there are no questions, I'll reserve the rest of my time for rebuttal. Thank you. May it please the Court. My name is Marie Quinlivan-Chek, and I represent the people of the state of Illinois. As to the second issue, the multiple entry on the record of more than one murder for the offense, the case the defendants relies on coward is distinguishable. In that case, there were multiple punishments for one act. Here there was only one punishment entered for each, for the murder and for the home invasion. There were four murders entered. It's a clerical mistake, and the people have agreed that it should be corrected. That is all that the defendant asked for in the petition. She said there was one act, one crime, that there had only been one murder, there should be one murder of conviction, one home invasion, there should be one home invasion conviction. The people completely agree. She asked for the relief that we have agreed to, and I believe that is the end of the matter. As to the second issue, ineffective assistance of counsel for failing to do a motion to suppress, the people acknowledge that this case is governed by People v. Hodges, a recent Illinois Supreme Court opinion, which says that any issue that has an arguable basis in law or in fact should survive to the second stage. However, this court in Sparks also said that if the defendant's claim is completely contradicted by the record, then it survives even a Hodges claim. And that is exactly what happens here. As to the confessions and the length of the confession, the length of time before she confessed, it is completely refuted by the record, and there is no need to look beyond the record as it exists now. Maria went with her mother to the police station on November 2nd between 9 and 10 a.m. She made a statement to an assistant state's attorney the following day, no later than 6 p.m. At that point, which is no more than 33 hours, and it's a maximum of 33 hours, at that point, Maria told the assistant state's attorney that she had initiated the plan to do the robbery, that she was with the shooter, Magic, when they were in the van, went to the victim's house, that she knew he was going to go in and rob. At that point, she was in for a pound, in for a penny. Really, her admissions later on the video statement are simply further corroboration of what she said and her further explanation of what her participation was. Once she initiated the plan, under both the theory of accountability and felony murder, she was in, she was liable for whatever happened with her co-conspirators. As far as the confession is concerned, she does allege in her post-conviction petition that she requested a lawyer as soon as she was there. She immediately requested counsel, and that Detective Samuels told her that she could not have a counsel and that if she did, she wouldn't see her child. Hodges says, again, we have to have an arguable basis in law for a claim, but Hodges also says there still has to be some support for the statements. There still has to be something besides just the allegation and the petition. Well, wait a minute, wait a minute. What is there in the record that rebuts what's in this petition? Where is there anything to show that this, that the allegations are based upon an indisputably meritless legal theory? Where is there anything that would show that they're based upon fanciful allegations? The only thing in the record, Your Honor, are the repeated statements that she waived her Miranda rights, that she waived her right to counsel. Well, we know she did that, but that's not what she's saying. She's saying that she told her lawyer all of these things that befell her and that she had invoked her right to counsel and nothing was done about it. And what I'm asking you, I'm uncomfortable with the state of this record that I'm looking for things that contradict what she says in her affidavit, and I find nothing. There's nothing here that shows that this trial judge did what he's supposed to do. He's supposed to look at the record and to see where it rebuts these fanciful allegations, these meritless legal theories. Where is there anything that does that? Your Honor, again, what the record shows is that she repeatedly waived her right to counsel when she waived her Miranda rights. She says the detective says that, the state's attorneys, both state's attorneys who testified said that. It's on the videotaped statements that she said that, on her handwritten statement that she waived her right to counsel. And our position is that her statement alone is not enough even to survive the first stage, that she should have had the corroboration of her counsel's affidavit. That one self-serving affidavit is not enough to move to the second stage. There's nothing in the record that I perceive that would show that her counsel has cross-examination of the state's attorney or the detectives actually weighed in on this issue at all. That certainly was not his strategy. That's correct. He did not go back to the original statements. And, again, the record as it stands says only that she waived her right to counsel. And our position is that she needs to have more than just her self-serving affidavit saying that she asked for counsel. Even at the first stage, she needed to have a corroborating affidavit from her counsel or from someone saying that she asked for counsel. She remained silent. She said nothing during the trial. Direct appeal would have been a good time to bring this all up, but she personally withdrew the direct appeal. She personally dismissed the direct appeal. There's absolutely nothing to go on other than her self-serving affidavit. Now, well after the fact, when at the time nothing was brought up and, again, she had a duty to bring this up on the direct appeal. And she personally dismissed the direct appeal. So there's a forfeiture of her ability to go forward based even on that. But our primary argument is that one self-serving affidavit from her is not enough to survive even the first stage, that she had to have more to support her allegations, that she needed to have another affidavit from her counsel saying that they discussed this. She needed to go one step further to survive the first stage. And so in conclusion, then, it's our position that the trial court's ruling was ultimately correct. On the record, the allegations concerning the length of time for the confession are not sustainable. At 33 hours, she admitted her participation in the plan, her initiation of the plan, and so she was liable for everything that happened. As for her right to counsel, our position is that she needed to have more than just her self-serving affidavit to support her allegation. Thank you. Very briefly, under Peeble v. Williams, she doesn't need an affidavit from her attorney to support her claim. When a defendant alleges that her attorney was ineffective in a post-conviction petition, her affidavit stating what she told her attorney is enough. The difficulty, as it states in Williams, the difficulty in obtaining an affidavit from trial counsel stating that he was ineffective is apparent. And that's why the court held in that case that the defendant's affidavit is enough. And there is nothing in the record that rebuts her claim. And regarding the state's argument that this case is distinguishable from Cowart, it's exactly the same as Cowart. In Cowart, the court entered two convictions for home evasion and two sentences, and the same exact thing happened here. The court entered two convictions for home evasion and two sentences, as well as four convictions for murder and four sentences for murder. The cases are exactly the same. If there are no questions, we're asking that you amend the first and second stage proceedings for the post-conviction case. Thank you.